# IN THE CIRCUIT COURT FOR ANDERSON COUNTY, TENNESSEE

**SHANE DIETLIN,**
    **PETITIONER**

**V.**
                            **DOCKET:** CSLA0033
                            **JURY REQUEST**

**NATHAN KIRK, CHRISTOPHER WALLACE,**
**DANIELLE MCGEE, MATTHEW MCGEE,**
                                2025 MAR 14 PM 2:16
**BRADLEY PREWITT, & AMANDA PREWITT**
                                FILED AC CIRCUIT COURT
    **DEFENDANTS**

---

## COMPLAINT

COMES NOW the Petitioner, Shane Dietlin, by and through counsel, and would respectfully show to the court as follows:

### JURISDICTION AND VENUE

1. Petitioner, Shane Dietlin, will show the Court that the cause of action occurred in Anderson County, Tennessee.

2. That Petitioner, Shane Dietlin, (Dietlin) is a resident of Kentucky.

3. That Defendant, Nathan Kirk, (Kirk) is a deputy with the Anderson County Sheriff's Department and is available for process at 101 S. Main St. Clinton, TN 37716.

4. That Defendant, Christopher Wallace, (Wallace) is a Sergeant with the Oak Ridge Police Department, Anderson County, Tennessee and is available for process at 200 S. Tulane Ave. Oak Ridge, TN 37830.

5. That Defendant, Danielle McGhee, (D. McGhee) is a resident of Anderson County and is available for process at 708 New Clear Branch Rd. Rocky Top, TN 37769.

6. That Defendant, Matthew McGhee, (M. McGhee) is a resident of Anderson County and is available for process at 708 New Clear Branch Rd. Rocky Top, TN 37769.

7. That Defendant, Bradley Prewitt, (B. Prewitt) is a resident of Anderson County and is available for process at 555 New Clear Branch Rd. Rocky Top, TN 37769.

8. That Defendant, Amanda Prewitt, (A. Prewitt) is a resident of Anderson County and is available for process at 555 New Clear Branch Rd. Rocky Top, TN 37769.

1

# EXHIBIT 1

## FACTS

9. All facts set out are based on information and belief and where available documentation. This matter was originally filed March 21, 2024, and nonsuited, Tenn. R. Civ. P. Rule 41, after defendants were served summons as part of the civil process.

10. Petitioner is the defendant in a criminal charge of custodial interference in the General Sessions Court for Anderson County Division I Docket 23ST0402. Exhibit A.

11. Petitioner and Defendant D. McGhee were formerly married and had children together for which they co-parent.

12. Upon information and belief, Defendant D. McGhee alleged that Petitioner committed the act of criminal custodial interference on March 19, 2023 by refusing to allow the Defendant D. McGhee to pick up the child, Mason Dietlin, from Petitioner's residence in Kentucky.

13. All defendants held knowledge that on March 19, 2023, that Plaintiff's minor child had informed him of the desire to commit suicide if returned to mother [Def. D. McGhee].

14. Defendant D. McGhee interfered with father co-parenting and concealed an appointment she had made with Life Connections Counseling Services for the party's child suicidal threats while with Defendant D. McGhee. She canceled the appointment on March 19, 2023, with full actual knowledge of the purpose of the appointment, and that Plaintiff had learned of the suicide threats from the child.

15. Upon information and belief, Deputy Nathan Kirk of the Anderson County Sheriff's Department made a report based on the statement of Defendant Danielle McGhee and signed an affidavit reflecting this, omitting the threatened suicide issue voiced by the child. However, inside of the Affidavit of Complaint is the statement "[child name] will be missing school as well as a previous scheduled doctor's appointment". General Sessions Court for Anderson County Division I Docket 23ST0402. This reference is the same appointment for suicide intervention not disclosed to the Plaintiff father.

16. All Defendants held actual knowledge of the suicide threats and did work together to prevent Plaintiff attempt to obtain treatment for his son as Defendant M. McGhee demanded that father be arrested for custodial interference.

17. Defendants D. McGhee, Wallace, and A. Prewitt, were present and on video, prior to the arrest of Plaintiff, when the minor child did threaten to harm himself if he were made to go with his mother, D. McGhee.

2

18. M. McGhee is a law enforcement officer in Rocky Top, Tennessee, and had previously sought Plaintiff's arrest for criminal custodial interference in Knox County, Tenn., even as officers did explain that they need sufficient lawful allegations. M. McGhee stated that in Anderson County they [law enforcement] just "hook em and book em into jail and sort it out later." When Knox County law enforcement would not arrest the Dietlin, he proceeded to insist on knowing the expected completion time for the report so he could sign an arrest warrant for the plaintiff himself.

19. It is alleged that M. McGhee sought assistance to help his wife in unlawful arrest of Plaintiff and all Defendants agreed and helped one another in the changing of stories and to cause multiple arrests.

20. At the time of Dietlin's arrest M. McGhee was a detective with Anderson County sheriff's office.

21. Petitioner is a defendant in a criminal charge of domestic assault in the General Sessions Court for Anderson County Division II Docket 23GS0685. Exhibit B.

22. Defendant D. McGhee has stated or signed, or caused to be signed three different statements concerning the allegation of domestic assault on March 20, 2023:

a. "Assaulted by the father [Plaintiff] in the presence of the child, by him [Plaintiff] aggressively grabbing and squeezing her [ D. McGhee] arm to pull her away from Mason and continue to infringe on her co-parenting time" Petition for Criminal Contempt, para. 18, filed March 20, 2023, Chancery Court Anderson County, Tennessee, docket 22CH3860

b. "The affiant observed the defendant [Plaintiff] turn from the walkway turn past the right side of the victim, and at the time swing his arm in a front to rear motion struck the victim [D. McGhee] on her right arm. The victim later stated she had redness on her arm from the contact. The defendant was arrested for domest6ic assault, ass the contact with the victim was extremely offensive." Affidavit of Complaint signed March 21,2023, by Defendant C. Wallace, attached to General Sessions Court for Anderson County Division II Docket 23GS0685.

c. "During the time the parties were outside with the child and law enforcement, the Mother [D. McGhee] attempted to show the Officer her parenting plan and the Father [Plaintiff] grabbed Mother's arm ripping the papers out from it all in the presence of the child while his girlfriend placed her hands on the Mother" Motion to Dismiss Petition for Emergency

3

Custody, para. 5, filed March 20, 2023, Juvenile Court Anderson County, Tennessee, docket 23-0319.

23. Plaintiff was not arrested as set out in the Affidavit of Complaint, but in fact was allowed to finish and sign an emergency custody order with his family law attorney, Jennifer Chadwell, while Oak Ridge City police took Mason Dietlin to the Oak Ridge Hospital Emergency room as the child claimed to want to commit suicide. Police attended. Covenant Health Methodist Medical Center records reflect that the intake at 10:28 on 3/20/2023 and that the child "wanted to kill himself if he had to go home with his mom." Pg. 3. Notes continue reflecting communication with Youth Villages involving both parents. Afterwards at some point "Father was reportedly arrested for a warrant." ". . . child initially wanted to go home with the father. . ." Pg. 5. The warrant was for Custodial Interference.

24. M. McGhee sought assistance from various officers, including Defendant Christopher Wallace and Defendant B. Prewitt, to arrest and incarcerate Plaintiff and argued with objecting officers until they agreed to assist M. McGhee. A. Prewitt assisted D. McGhee as they are close friends and A. Prewitt actively sought to convince law enforcement to ignore the defense that the child threatened suicide to obtain the arrest of Plaintiff illegally. Both Affidavits of Complaint omit actual knowledge of the suicide issue and intentionally omit any mention of the actual defense to the Custodial Interference, further conceal officer involvement in the transport of the child to the hospital. Further, four Oak Ridge City police officers were present, and none believed any violence or even issued any verbal warning of any domestic violence, including Defendant Wallace. None of the body cams or videos obtained reflect any inappropriate conduct, other than D. McGhee assault on Plaintiff, or even the logistically challenging claim related to arm swinging. Indeed Defendant A. Prewitt, close friends with the McGhee Defendants, participated in the alleged altercation and voiced no concern or allegation at that time.

25. The Domestic Violence warrant was dismissed during the preliminary hearing as the video presented showed that Defendant Wallace was fully present and did actually view the entire exchange between Plaintiff and Defendant Danielle McGhee where she claimed falsely that Plaintiff grab and bruised or injured her right arm while the video clearly shows that Plaintiff passed to her left, the pass taking approximately one tenth of a second, in full view of Defendant Wallace. Plaintiff never touched Defendant Danielle McGhee's right arm.

4

All such testimony and warrant are false, known to both defendants, at the time of the entry of the Warrant, in furtherance of a conspiracy participated by defendants. Additionally, the video clearly reflects that D. McGhee did attack Plaintiff but was restrained by Plaintiff's friend, all known and observed by Wallace who ignored the attack.

26. Telling is that the video of event which resulted in the Domestic Violence charge, was recorded by Defendant A. Prewitt. Defendant A. Prewitt supported her friend Defendant D. McGhee in the false allegations for improper purpose and engaged her husband B. Prewitt, to participate in the false and malicious allegations known to be false.

27. Plaintiff directed an Oak Ridge City officer to escort the child to the Emergency intake at Covent Health, Methodist Medical Center where the Plaintiff was told by Oak Ridge City police that he could meet his son there. The affidavit claiming arrest, inferring at that time, is false. D. McGhee and A. Prewitt were ordered to stay in the waiting room by hospital staff and police while the Plaintiff was escorted to the exam room where the child was being evaluated.

28. Later, Gabriel Dietlin told his father, Shane Dietlin, that B. Prewitt discussed the case with him while Dietlin was incarcerated. In this conversation, B. Prewitt stated that the only person surprised about the arrest was [your dad] and that, because this was his first offense, he would probably only get probation out of this after looking at the case file. B. Prewitt did not indicate any remorse for his participation in the forcing of officers to file incomplete affidavits omitting known facts which if known to a magistrate prevented issuance of a warrant.

29. Dietlin did make a formal inquiry to the Anderson County Sheriff's Office in which they stated they had started an investigation on M. McGhee in relation to the arrest. Dietlin was later told that they had "dropped" the investigation as M. McGhee was no longer employed by them. The representative for the Sherriff's Office would not discuss the case further but did suggest that he get someone to investigate it. No evidence of investigation is known.

30. The children ultimately were placed with the Plaintiff as primary residential parent by the civil family court, upon hearing facts, allegations, entered Order and ultimately agreement.

31. Over the past few years, M. McGhee has created instances in which he elicited a physical response from Dietlin. One such time was at a wrestling match at Karns High School in which a Knox County Officer responded and made a report. At this event, D. McGhee

5

attempted to elicit a physical response from Dietlin's wife, Natasha Moses, which is also in the report. It is a known fact that D. McGhee and M. McGhee conceal and carry firearms and as such, the threat of harm is always present.

32. Defendant B. Prewitt, assisted by Defendant M. McGhee, did abuse his office as a prosecutor to pressure the continuance of the prosecution of proceedings when actual knowledge of the fact that the allegations in the warrant for Domestic Violence was factually false, and the officer signing, Defendant Wallace, the warrant for the arrest was an actual witness to the falsely alleged event but continued in furtherance of the civil conspiracy to harm Plaintiff.

33. Defendant D. McGhee did file additional civil motions to harm Plaintiff to include but not limited to: Petition for Order of Protection, Petition for criminal contempt, Petition for Emergency Change of Custody, all ultimately denied and Plaintiff becoming the primary residential parent of his sons.

34. Defendant M. McGhee did seek to pressure the continuance of the prosecution of proceedings with actual knowledge of the fact that the allegations in the warrant for Domestic Violence was factually false, and the officer signing the warrant for the arrest was an actual witness to the falsely alleged event, Defendant Wallace, but continued in furtherance of the civil conspiracy to harm Plaintiff.

## CLAIMS

### DEFAMATION

35. Paragraphs 1 through 26 are incorporated and re-alleged herein.

36. That the Petitioner had charges brought against him of custodial interference and domestic violence thereby exposing him to public hatred, contempt and ridicule. These charges deprived him of public confidence, and limited his constitutional rights.

37. Intentional omission of facts for the purpose of exposing Petitioner to public hatred, contempt, and ridicule, is a false publication for tortious purpose.

38. That Petitioner has suffered a negative impact as to his standing in the community, has suffered economic harm in a full amount not yet determined, and public humiliation and embarrassment because of the conduct and action of the Defendants or agents of the Defendants.

6

39. That damages, economic and non-economic, be awarded in an amount of $500,000.00.

40. That punitive damages are appropriate in the amount of Five Million Dollars ($5,000,000.00).

## MALICIOUS PROSECUTION

41. All preceding paragraphs are incorporated and re-alleged herein.

42. Defendants started or caused someone else to start criminal proceeding against Plaintiff.

43. Defendants acted with malice.

44. Defendants acted without probable cause in starting or causing someone else to start the criminal proceeding against plaintiff.

45. Defendants failed to conduct a reasonable investigation of the elements of law and application to facts prior to the institution of criminal proceedings.

46. Defendants took an active part in the continuation of the prosecution after learning of facts that no reasonable person would believe the person accused is guilty of the charges.

47. The case against plaintiff was/will be dismissed.

48. That damages, economic and non-economic, be awarded in an amount of $500,000.00.

49. That punitive damages are appropriate in the amount of Five Million Dollars ($5,000,000.00).

## ABUSE OF PROCESS

50. All preceding paragraphs are incorporated and re-alleged herein are incorporated and re-alleged herein.

51. Defendants used the legal process for which the legal process was not designed and for a wrongful purpose.

52. As a proximate result of Defendants' conduct, Petitioner suffered serious mental and physical injury of such quantity and quality that no reasonable person in a civilized society should be expected to tolerate it.

53. Defendants conspired to maliciously prosecute, maliciously continue prosecution, abuse process, and intentionally inflict extreme emotional distress.

54. The Defendants are jointly and severally liable for all injuries and damage suffered by the Petitioner.

55. Petitioner is suffering a continuing harm and final damages are not yet calculated.

7

56. That the Petitioner be awarded damages in the amount of Five Hundred Thousand Dollars ($500,000.00).

57. That the Petitioner be awarded punitive damages in the amount of Five Hundred Thousand Dollars ($500,000.00).

## TORTIOUS INTERFERENCE WITH PARENTAL RIGHTS

58. All preceding paragraphs are incorporated and re-alleged herein are incorporated and re-alleged herein.

59. The elements of the claim of Tortious Interference with Parental Rights, Wyatt v. McDermott, 283 Va. 685, 699 (Va. 2012), are:

(1) the complaining parent has a right to establish or maintain a parental or custodial relationship with his/her minor child;

(2) a party outside of the relationship between the complaining parent and his/her child intentionally interfered with the complaining parent's parental or custodial relationship with his/her child by removing or detaining the child from returning to the complaining parent, without that parent's consent, or by otherwise preventing the complaining parent from exercising his/her parental or custodial rights;

(3) the outside party's intentional interference caused harm to the complaining parent's parental or custodial relationship with his/her child; and

(4) damages resulted from such interference.

60. Petitioner is making a good faith, non-frivolous claim filed for the express purpose of extending, modifying, or reversing existing precedent, law or regulation, or for the express purpose of establishing the meaning, lawfulness or constitutionality of a law, as the Virginia Supreme Court in the Wyatt v. McDermott, 283 Va. 685, 699 (Va. 2012) found that this cause of action is available. Here Petitioner is seeking a method to make whole via damages for the actions of persons alien to the parent child relationship where they are assisting in the removal of a child from father who was acting in good faith to protect the child who stated suicide intent if placed with mother, a claim mother actively concealed from father. Further, mother signed a domestic violence warrant in an attempt to support her custodial interference warrant, a warrant based on factually false allegations actually known to Defendant Wallace as he was in full position to see that the only party engaging

8

in actual violence was when Defendant D. McGhee attacked Plaintiff, all on the video of the event.

61. In this matter the co-equal approach to parenting, as set out in Tenn. Code Ann. §§ 36-6-401 and 36-6-404, is reduced to an Order that uses the language of shared responsibility and shared rights, but in reality, is enforced unequally in an unconstitutional manner.

62. Conflict of Law exists as the Permanent Parenting Plan Order is mandated in all divorces involving minor children between the parties, Tenn. Code Ann. § 36-6-404, plain language of the Order cites that the "Parenting Plan must designate the parent with whom the child is scheduled to reside a majority of the time as the Primary Residential Parent of the child(ren). The designation *shall not affect either parent's rights and responsibilities* under the Parenting Plan.". Permanent Parenting Plan Order DOES NOT AWARD CUSTODY, the word "custody" is not applicable nor is ordered. Indeed, the plain language of the Order provides that "Each parent shall make decisions regarding the day-to-day care of a child while the child is residing with that parent, **including any emergency decisions affecting the health or safety of a child**". Permanent Parenting Plan Order, page 4, emphasis added. Additionally, the same Order provides that "Major decisions regarding each child shall be made as follows" all categories reflect those major decisions "Joint". Compare any violation of Tenn. Code Ann. § 39-13-306(a)(2) requires an Order of "custody" which in this matter does not exist. Tenn. Code Ann. § 39-13-306 was last revised in 2004 when it was replaced using the current language. See Tenn. Pub. Act Chap. 834. No revision of the "Custodial Interference" statute occurred after the enactment of the law of 2005, where the "Findings" of the legislature to modify the law to a neutral shared responsibility between parents. Tenn. Code Ann. § 36-6-401. Exhibit C.

63. Plaintiff alleges that defendants, with full knowledge of the suicide threats of the child while in custody and control of the mother, agreed with the mother and each took active steps to interfere with the father's effort and right to protect his child and all did attempt to conceal the conduct of mother from father. Plaintiff acted in accord with the Permanent Parenting Plan Order and to protect his sons. Indeed, the civil effort of Defendant D. McGhee failed as the family court rejected Defendant effort to sanction Plaintiff.

64. Plaintiff alleges that the co-defendants caused the child to be placed with the mother while he sat in jail falsely accused of custodial interference, a child alleging intent to commit

9

suicide, without any effort to ask why the child would choose death over going home with mother. All defendants participated in the effort to remove father from his exercise of rights to include the right to protect his son.

65. As a result of Plaintiff efforts, he is now the primary custodial parent of the minor child, the older child also with father but has aged out.

66. Mother, Defendant A. McGhee has been removed as primary residential parent.

67. That damages, economic and non-economic, be awarded in an amount of $500,000.00.

68. That punitive damages are appropriate in the amount of Five Million Dollars ($5,000,000.00).

## INTENTIONAL INFLICTION OF EMOTIONAL HARM

69. All preceding paragraphs are incorporated and re-alleged herein are incorporated and re-alleged herein

70. Defendants acted with specific intent to cause severe emotional distress or with a reckless disregard of the probability of causing Petitioner severe emotional distress, mental suffering, mental anguish, fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, and worry.

71. Defendants' conduct was so extreme and outrageous that it clearly exceeded the bounds of decency, making it intolerable in a civilized community.

72. As a proximate result of Defendants' conduct, Petitioner suffered serious mental and physical injury of such quantity and quality that no reasonable person in a civilized society should be expected to tolerate it.

73. The Defendants are jointly and severally liable for all injuries and damage suffered by the Petitioner.

74. Petitioner is suffering a continuing harm and final damages are not yet calculated.

75. Petitioner is entitled to damages in the amount of Five Hundred Thousand Dollars ($500,000.00).

## CONSPIRACY

76. All preceding paragraphs are incorporated and re-alleged herein are incorporated and re-alleged herein.

10

77. Defendant D. McGhee conspired with Defendant Kirk to file claims in criminal jurisdictions which were unfounded in the law, fully aware that the child stated and exhibited suicidal tendencies and thoughts, concealed by Defendants D McGhee and M. McGhee.

78. Defendant Kirk assisted Defendant D. McGhee in the actual filing of the custodial interference complaint and did assist or participate in the prosecution of the criminal matter, with full knowledge that the charge was frivolous and subject to statutory defense.

79. Defendant Wallace assisted Defendant D. McGhee in the actual filing of the domestic violence complaint and did assist or participate in the prosecution of the criminal matter, with full knowledge that the charge was frivolous.

80. Defendant D. McGhee did conspire with Defendant Wallace to file claims in criminal jurisdictions which were unfounded in the law with actual knowledge that the claimed injury false as he actually observed the event but his testimony inconsistent with the video of the actual event.

81. Defendant Wallace did assist Defendant D. McGhee in the actual filing of the complaint and did assist or participate in the prosecution of the criminal matter.

82. Defendants M. McGhee, B. Prewitt, and A. Prewitt did conspire with Defendant D. McGhee to file claims in criminal jurisdiction which were unfounded in the law.

83. Defendants M. McGhee, B. Prewitt, Wallace and A. Prewitt did aid in the fabrication of, known to not be true, facts with Defendant D. McGhee to aid in the prosecution of the Petitioner.

84. Defendant B. Prewitt did communicate, directly or indirectly,

## LOSS OF SOCIETY AND CONSORTIUM

85. Paragraphs 1 through 26 are incorporated and re-alleged herein.

86. As a direct and proximate result of the intentional acts of the Defendants, Petitioner has sustained emotional distress and suffering caused by the false criminal complaint, abuse of the civil process, and the numerous direct wanton actions to destroy the Petitioner.

87. As a direct and proximate result of the intentional acts of the Defendants, Petitioner lost for a period of time the services, companionship, consortium and society of Natasha Moses to which he is entitled as husband, thus Defendants are liable for the aforesaid loss.

11

88. Petitioner is suffering a continuing harm and final damages are not yet calculated.

89. Petitioner is entitled to damages in the amount of Fifty Thousand Dollars ($50,000.00).

**WHEREFORE**, Petitioner, Shane Dietlin, respectfully prays:

A. That the Defendants be served with process as provided by the Tennessee Rules of Civil Procedure;

B. That upon hearing this cause, that the Petitioner be awarded damages in an amount to be determined as set out above;

C. That Petitioner elect his damages, if required;

D. That the Petitioner be awarded punitive damages in an amount to be determined;

E. That a jury of Twelve (12) hear this matter;

F. That the costs of this matter be taxed to the Defendants for which execution may be had if necessary;

G. That the Petitioner have such other, further, and general relief to which they may be entitled.

## THIS IS THE FIRST APPLICATION FOR EXTRORDINARY PROCESS

Respectfully submitted this, _13_ day of March, 2025.

David B. Hamilton (BPR 020783)
1810 Merchant Dr.
Knoxville, TN 37912
(865) 219-9250 | fax (865) 219-7982
dbh@dbhamilton.com

## COST BOND

We acknowledge ourselves principle and as surety for all costs, taxes and damages in this case and in accordance with Tenn Code Ann § 20-12-120.

This _13_ day of March, 2025

Shane Dietlin, Principle  By permission  David B. Hamilton, Surety

12

## OFFICER'S RETURN

Warrant served by arresting/citing defendant on
__3-20-23__ , and setting case(s) for trial
before the General Sessions Court in Clinton, TN on
_____ at _____m.

_____ / ACSO
Officer's signature and agency
Dakota Williams
CASE / OCA/ SCN NO. 2303190040

### WITNESS/VICTIM LIST

| 1. | Name: | Danielle McGhee |
|----|-------|-----------------|
|    | Address: | |
|    | Phone: | |
| 2. | Name: | |
|    | Address: | |
|    | Phone: | |
| 3. | Name: | |
|    | Address: | |
|    | Phone: | |
| 4. | Name: | |
|    | Address: | |
|    | Phone: | |
| 5. | Name: | |
|    | Address: | |
|    | Phone: | |
| 6. | Name: | |
|    | Address: | |
|    | Phone: | |

### FAILURE TO APPEAR
### BOND FORFEITURE

☐ Defendant had failed to appear in court or to report to jail
when required to do so.

☐ A failure to Appear Warrant shall be issued.
Defendant's bond $_____

☐ The defendant's appearance bond shall be forfeited in accordance with law.

_____
Judge/Clerk/Deputy Clerk/Judicial Commissioner

---

## STATE WARRANT
## ANDERSON COUNTY, TENNESSEE
## GENERAL SESSIONS COURT DIV. I
Case No. __23STO402__

State of Tennessee
vs.

Name: __SHANE DIETLIN__

Address: __96 BUSS MANNING ROAD__

__WILLIAMBURG, KY 40769__

Phone: _____

DOB: _____ Race: W _____ Sex: M

Hgt: 0 _____ Wgt: 1bs _____ Hair: _____

Soc. Sec. No.: _____ Eyes: _____

DL#/State/Class: D99243479 _____ /KY

Charge:
39-13-306 - CUSTODIAL INTERFERENCE

### TRIAL DATES

Original Trial Date: _____ m _____

| ☐PA ☐H ☐ST | _____ m _____ |
| ☐PA ☐H ☐ST | _____ m _____ |
| ☐PA ☐H ☐ST | _____ m _____ |
| ☐PA ☐H ☐ST | _____ m _____ |
| ☐PA ☐H ☐ST | _____ m _____ |
| ☐PA ☐H ☐ST | _____ m _____ |

Prob. Exp. _____ Prob. Ext. _____

Attorney ☐ PD/ ☐OTHER _____

Notes: _____
_____
_____
_____

---

### WAIVER OF RIGHTS
(1) The Court has advised me that I have the right to be represented by an attorney, and if indigent, to have an attorney appointed to represent me. I WAIVE MY RIGHT TO AN ATTORNEY AND WISH TO PROCEED IN THIS CASE WITHOUT AN ATTORNEY.

_____        _____
Date                          Defendant
2) I find the Defendant understands and freely and voluntarily waives the right to an attorney.

_____        _____
Date                          Judge
3) ☐ I waive my right to a preliminary hearing and agree for my case to be bound over in the Anderson County Grand Jury.
☐ I waive my right to be tried only after being indicted by the Grand Jury and indict my right to a trial by jury

_____        _____
Date                          Defendant

### JUDGMENT / ORDER
☐ See separate order.
☐ Nolle Prosequi _____

☐ Dismissed, costs taxed to _____

☐ Bound to Grand Jury. ☐ Waived to Grand Jury

☐ Judicial Diversion 40-35-313

☐Defendant found GUILTY of the crime of

T.C.A. _____ on a plea of _____

☐ Sentenced to a fine of $_____ and to pay the
costs; and to _____ month(s) and _____ day(s)
in jail with credit of _____

☐ To serve _____ on consec/alternat/straight
_____ beginning _____

_____ with credit of _____

☐ _____ hrs comm service

☐ Driving privileges suspended/revoked for _____
years.

☐ Jail /Balance of sentence suspended on probation
☐unsupervised ☐supervised probation
SEE SEPARATE PROBATION ORDER FOR CONDITIONS

Concur/Consec. w/ _____

This _____ day of _____, 20 ___

_____ Judge



# GENERAL SESSIONS COURT OF ANDERSON COUNTY, TENNESSEE
## DIVISION I

STATE OF TENNESSEE     vs.     SHANE DIETLIN

## AFFIDAVIT OF COMPLAINT

I, the affiant named below, after being sworn, state under oath that on or about, **03/19/2023** in Anderson County, Tennessee, committed the offense(s) of Violation(s) of:

| T.C.A. | Class / Type | Offense |
|--------|--------------|---------|
| 39-13-306 | E FELONY | 39-13-306 - CUSTODIAL INTERFERENCE |

I further state under oath that the essential facts constituting the offense, the sources of my information and the reasons why this information is believable and reliable are as follows:

On 03/19/2023 at approximately 2154 hours, I Deputy N. Kirk of the Anderson County Sheriff's Office made contact with W/F Danielle McGhee, date of birth 03/30/1986 reference to a child custody issue.

Upon arrival, Danielle advised she and her ex-husband Shane Christopher Dietlin, date of birth 04-03-1986 have custody agreements in order set by the courts of Anderson County Tennessee as of 10/31/2022. Danielle advised Shane was to have custody of their children in common during spring break starting from 03/10/2023 at the time of school dismissal. Both children were to be returned home on the evening before the end of spring break on 03/19/2023 at 6:00pm so that they could return to school the following day as stated in the court order.

Danielle advised her older son, Gabriel Dietlin returned home alone, while Mason Dietlin stayed at his father's Shane Dietlin's. Danielle advised she received a email from Shane stating the following:

"Mason isn't feeling well, he will be staying with us tonight. Gabriel will not be bringing him home. Please do not come pick him up. He will be staying here tonight." Thank you, Shane.

Danielle attempted to pick up Mason at Shane's residence located in Williamsburg Kentucky, however she was unsuccessful in doing so as local and state law enforcement advised that this was a civil matter and will not be turning over custody of Mason to Danielle.

Danielle does have current custody papers that have been served on both parties outlying the court ordered agreements as well at clearly defined times of pickup and return of the children. As a result of Shane's actions Mason will be missing school as well as a previous scheduled doctor's appointment.

As of this time due to Shane's actions, I will be seeking warrants for Shane arrest for Custodial interference T.C.A. 39-13-306.

Affiant's Signature: _____

Name (Printed): Deputy, Nathan Kirk - (160)

Address (Printed): 101 S. MAIN STREET CLINTON, TN 37716

Phone Number: (865) 457-2414

Sworn to and subscribed before me on 3/20/2023

_____
Judge/Clerk/Judicial Commissioner

## NOTICE

Tenn.Code Ann. §40-6-204; if the defendant's charge is dismissed, a no true bill is returned by a grand jury, the defendant is arrested and released without being charged with an offense, or the court enters a nolle prosequi in the defendant's case, the defendant is entitled, upon petition by the defendant to the court having jurisdiction over the action, to the removal and destruction of all public records relating to the case without cost to the defendant.

## ARREST WARRANT

**TO ANY LAWFUL OFFICER OF THE STATE:**

Based upon the affidavit of complaint made and sworn to before me by    Deputy, Nathan Kirk - (160)   , there is probable cause to believe that the offense of T.C.A. §    39-13-306 / 39-13-306 - CUSTODIAL INTERFERENCE

has been committed in Anderson County, Tennessee, and charging the defendant named above, you are therefore commanded in the name of the State of Tennessee forthwith to arrest and bring this person before the General Sessions Court in Clinton to answer the said charge.

3/20/23
Date

_____
Judge/Clerk/Judicial Commissioner

Bond set at $ 25,000

☐ Bond to be set at arraignment or voluntary bond schedule if not arraigned or bond not listed on warrant
☐ Already released on a citation
☐ To be released on a citation

## OFFICER'S RETURN

Warrant served by arresting/citing defendant on the
20 day of March, 2023, at 1 19 P.m.
and setting case(s) for trial before the General
Sessions Court in Oak Ridge, TN on the _____ day
of _____, 20___ at _____ .m.

_____ ORPD
Officer's signature and agency

### CASE / OCA/ SCN NO.

### WITNESS/VICTIM LIST

| 1. | Name: | Danielle Maria McGhee (Victim) |
|----|-------|-------------------------------|
|    | Address: |  |
|    | Phone: |  |
| 2  | Name: |  |
|    | Address: |  |
|    | Phone: |  |
| 3  | Name: |  |
|    | Address: |  |
|    | Phone: |  |
| 4  | Name: |  |
|    | Address: |  |
|    | Phone: |  |
| 5. | Name: |  |
|    | Address: |  |
|    | Phone: |  |
| 6. | Name: |  |
|    | Address: |  |
|    | Phone: |  |

### FAILURE TO APPEAR
### BOND FORFEITURE

☐ Defendant had failed to appear in court or to report to
Jail

when required to do so.

☐ A failure to Appear Warrant shall be issued.
Defendant's bond $_____

☐ The defendant's appearance bond shall be
forfeited in accordance with law.
Date _____

_____
Judge/Clerk/Deputy Clerk/Judicial Commissioner

---

## STATE WARRANT
## ANDERSON COUNTY, TENNESSEE
## GENERAL SESSIONS COURT DIV. II
Case No. 23 G S 0685

State of Tennessee
vs.

| Name: | Shane NMN Dietlin |
|-------|-------------------|
| Address: | 96 Buss Manning Rd |
|  | Williamsburg, KY 40769 |
| Phone: | (546) 666-6 |
| DOB: | Race: White  Sex: Male |
| Hgt: | Hair: Blonde |
| Soc. Sec. No.: | Eyes: Blue |
| DL#/State/Class: D | /KY  /D |

Charge:
Domestic Assault

### TRIAL DATES

Original Trial Date: _____ m _____ . _____

| ☐ P/N ☐ H ☐ ST | _____ m _____ . _____ |
| ☐ P/N ☐ H ☐ ST | _____ m _____ . _____ |
| ☐ P/N ☐ H ☐ ST | _____ m _____ . _____ |
| ☐ P/N ☐ H ☐ ST | _____ m _____ . _____ |
| ☐ P/N ☐ H ☐ NT | _____ m _____ . _____ |
| ☐ P/N ☐ H ☐ NT | _____ 6t _____ . _____ |
| ☐ P/N ☐ H ☐ ST | _____ m _____ . _____ |

Prob. Exp._____ Prob. Est._____

Attorney: ☐ PD/ ☐ OTHER _____

Notes: _____
_____
_____
_____

---

## WAIVER OF RIGHTS
1) The Court has advised me that I have the right to be represented by an attorney, and if indigent, to have an attorney appointed to represent me.
I WAIVE MY RIGHT TO AN ATTORNEY AND WISH TO PROCEED IN THIS CASE WITHOUT AN ATTORNEY.

_____        _____
Date          Defendant

2) I find the defendant understands and freely and voluntarily waives the right to an attorney.

_____        _____
Date          Judge

3) ☐ I waive my right to a preliminary hearing and agree for my case to be bound over to the Anderson County Grand Jury.
☐ I waive my right to be tried only after being indicted by the Grand Jury and waive my right to a trial by Jury

_____        _____
Date          Defendant

### JUDGMENT / ORDER

☐ See separate order.

☐ Nolle Prosequi _____

☐ Dismissed, costs taxed to _____

☐ Bound to Grand Jury  ☐ Waived to Grand

☐ Judicial Diversion 40-35-313

☐ Defendant found GUILTY of the crime of

_____

T.C.A. _____ on a plea of _____

☐ Sentenced to a fine of $_____ and to pay the
costs, and to _____ month(s) and _____ day(s)
in jail with credit of _____

☐ To serve _____ on consed/alternat/straight
_____ beginning _____

_____ with credit of _____

☐ _____ hrs comm service

☐ Driving privileges suspended/revoked for _____
years

☐ Jail-/Balance of sentence suspended on probation
☐ unsupervised ☐ supervised probation
SEE SEPARATE PROBATION ORDER FOR CONDITIONS

Concur/Consec. w/_____

This _____ day of _____, 20___

_____ Judge

---



EXHIBIT
B

# GENERAL SESSIONS COURT OF ANDERSON COUNTY, TENNESSEE
## DIVISION II

STATE OF TENNESSEE     vs.     Shane NMN Dietlin

## AFFIDAVIT OF COMPLAINT

I, the affiant named below, after being sworn, state under oath that on or about, <u>March 20, 2023</u> in Anderson County, Tennessee, committed the offense(s) of Violation(s) of:

| T.C.A. | Class / Type | Offense |
|--------|-------------|---------|
| 39-13-111 | A Misdemeanor | Domestic Assault |

I further state under oath that the essential facts constituting the offense, the sources of my information and the reasons why this information is believable and reliable are as follows:

The affiant, a sworn officer with the Oak Ridge Police Department, responded to a child custody issue at Jennifer Chadwell Law Office, 240 W Tennessee Ave, on March 20, 2023. The affiant made contact with the victim, who stated the defendant was in violation of the agreed upon child parenting plan, as he had no returned their son to her for the agreed upon time.

The affiant then made contact with the defendant, who had their son, inside the law office. The defendant stated he was concerned over the welfare of his son and him being with the victim. The victim stated she wished to speak with her son, at which time the defendant, and the son, went outside to the front steps/walkway entrance of the business.

The affiant observed both the victim and defendant attempt to speak with the son, at which time the son became very upset and had an outburst. The affiant observed the defendant turn from the walkway, walk past the right side of the victim, and at that time swung his arm in a front to rear manner, and that motion struck the victim on her right arm. The victim later stated she had redness on her arm from the contact. The defendant was arrested for domestic assault, as the contact with the victim was extremely offensive.

This offense did occur in the City of Oak Ridge, Anderson County, State of Tennessee.

Affiant's Signature: _____ 4534    Sworn to and subscribed before me on

Name (Printed): Sgt. C.Wallace     Employee Number: 4534

Address (Printed): 200 S. Tulane Ave., Oak Ridge, TN 37830

Phone Number: (865) 425-4399          Judge/Clerk/Judicial Commissioner

## NOTICE

Tenn.Code Ann. §40-6-204; if the defendant's charge is dismissed, a no true bill is returned by a grand jury, the defendant is arrested and released without being charged with an offense, or the court enters a nolle prosequi in the defendant's case, the defendant is entitled, upon petition by the defendant to the court having jurisdiction over the action, to the removal and destruction of all public records relating to the case without cost to the defendant.

## ARREST WARRANT

### TO ANY LAWFUL OFFICER OF THE STATE:

Based upon the affidavit of complaint made and sworn to before me by <u>Sgt. C.Wallace</u>, there is probable cause to believe that the offense of T.C.A. § <u>39-13-111</u>   <u>Domestic Assault</u>

has been committed in Anderson County, Tennessee, and charging the defendant named above, you are therefore commanded in the name of the State of Tennessee forthwith to arrest and bring this person before the General Sessions Court in Clinton to answer the said charge.

3/21/23
Date      Judge/Clerk/Judicial Commissioner

Bond set at $_____

☑ Bond to be set at arraignment or voluntary bond schedule if not arraigned or bond not listed on warrant
☐ Already released on a citation
☐ To be released on a citation

| STATE OF TENNESSEE | CHANCERY COURT | ANDERSON COUNTY |
|---|---|---|
| **PERMANENT PARENTING PLAN ORDER**<br><br>**AGREED** | | **FILE No. 22CH3860**<br>Notice of Entry<br>Requested<br><br>FILED<br>OCT 31 2022<br>3:15<br>HAROLD R. COLLINSON |
| **PLAINTIFF**<br>**SHANE DIETLIN**<br>Father | **DEFENDANT**<br>**DANIELLE MCGHEE**<br>Mother | |

The mother and father will behave with each other and each child so as to provide a loving, stable, consistent and nurturing relationship with the child even though they are divorced. They will not speak badly of each other or the members of the family of the other parent. They will encourage each child to continue to love the other parent and be comfortable in both families.

This plan modifies an existing Order dated June 6, 2018.

| Child's Name | Date of Birth |
|---|---|
| Gabriel Dietlin | |
| Mason Dietlin | |

## I. RESIDENTIAL PARENTING SCHEDULE

### A. RESIDENTIAL TIME WITH EACH PARENT

The Parenting Plan must designate the parent with whom the child is scheduled to reside a majority of the time as the Primary Residential Parent of the child(ren). The designation shall not affect either parent's rights and responsibilities under the Parenting Plan.

The Primary Residential Parent is the Mother

Under the schedule set forth below, each parent will spend the following number of days with the children:

    Mother 245 days         Father 120 days

### B. DAY-TO-DAY SCHEDULE

The Mother shall have responsibility for the care of the children except at the following times when the other parent shall have responsibility from Friday after school until Sunday at 6:00 p.m. every other week. Father's first weekend shall begin October 21, 2022.

This parenting schedule begins upon execution.

RECEIVED<br>OCT 17 2022<br>BY:<br>EXHIBIT<br>C

## C. HOLIDAY SCHEDULE AND OTHER SCHOOL FREE DAYS

*Indicate if child or children will be with parent in ODD or EVEN numbered years or EVERY year:*

|  | **MOTHER** | **FATHER** |
|---|---|---|
| New Year's Day | | See Winter Break |
| Martin Luther King Day | The parent who has the children the weekend before the holiday shall have the children until 6:00 p.m. the day of the holiday. | |
| Presidents' Day | The parent who has the children the weekend before the holiday shall have the children until 6:00 p.m. the day of the holiday. | |
| Easter Day (unless otherwise coinciding with Spring Vacation) | | Normal Schedule |
| Mother's Day | The Mother shall have the children the entire weekend from Friday after school until Sunday at 6:00 p.m. | |
| Memorial Day | The parent who has the children the weekend before the holiday shall have the children until 6:00 p.m. the day of the holiday. | |
| Father's Day | The Father shall have the children the entire weekend from Friday after school until Sunday at 6:00 p.m. | |
| July 4th | | Normal Schedule |
| Labor Day | The parent who has the children the weekend before the holiday shall have the children until 6:00 p.m. the day of the holiday. | |
| Thanksgiving Break: | The Father shall have the children from the time school is dismissed until Sunday at 6:00 p.m. in even years and the Mother shall have the holiday in odd years. | |
| Children's Birthdays · | | Normal Schedule |
| Other School-Free Days | | Normal Schedule |
| Mother's Birthday | | Normal Schedule |
| Father's Birthday | | Normal Schedule |

A holiday shall begin at 6:00 p.m. on the night preceding the holiday and end at 6:00 p.m. the night of the holiday, unless otherwise noted above.

This holiday schedule and other school free days shall supersede the Day-To-Day

2

1/04/2021

Schedule.

**D.    FALL VACATION**

The Mother shall have the children every year from the time school is dismissed until the evening before school returns at 6:00 p.m.

**E.    WINTER (CHRISTMAS) VACATION**

The Mother shall have the children for the first period from the day and time school is dismissed until December 24 at 8:00 p.m. in odd-numbered years. The other parent will have the child or children for the second period from the day and time indicated above until 8:00 p.m. two days before school resumes.  The parties shall alternate the first and second periods each year.

**F.    SPRING VACATION**

The Father shall have the children every year from the time school is dismissed until the evening before school returns at 6:00 p.m.

**G.    SUMMER VACATION**

The parties shall alternate weeks with the children beginning on the Friday following school's dismissal until the Friday before school resumes with each parent having a week from Friday at 6:00 p.m. until the following Friday at 6:00 p.m.  The Father shall have the children for the first two weeks and then alternate weekly thereafter from Friday until the following Friday.

**H.    TRANSPORTATION ARRANGEMENTS**

The receiving parent shall be responsible for transporting the children from the home of the other parent or school the children are attending.  The minor children shall be allowed to drive to transport themselves once they have obtained their driver's license.

Payment of long distance transportation costs *(not applicable)*

If a parent does not possess a valid driver's license, he or she must make reasonable transportation arrangements to protect the child or children while in the care of that parent.

**I.    SUPERVISION OF PARENTING TIME** *(not applicable)*

**J.    OTHER**

The following special provisions apply:

Neither parent shall utilize corporal punishment with the minor children.

The parties shall equally divide the children's agreed extracurricular expenses.  In the event the Father does not agree to allow the child to participate then the Mother shall be allowed

3

to enroll the child in the activity at her sole expenses and both parties shall ensure the children attend all scheduled activities. The children shall not be enrolled in more than one (1) activity per semester.

The parties shall exchange any and all uncovered medical expenses and the other party shall reimburse the paying parent within thirty (30) days. If the parent paying the expense fails to timely supply the bill within ninety (90) days of receipt will result in the other parent not being liable. As of today's date, there are are uncovered expenses that have not been paid. The Mother shall resend copies of the outstanding bills to the Father within thirty (30) days and Father shall reimburse her for said expenses within thirty (30) days of receipt.

The children shall continue in their current activities.

The parties agree that Mason shall have braces and they shall equally divide the costs for the same and shall set up their own payment plan with the orthodontist.

If a child desires to speak with the other parent they shall be allowed to have unimpeded telephone calls with the other parent.

The children shall be allowed to go on the cruise with the Mother in October 2022.

That if either parent wants to enroll the children in counseling or the child desires to attend counseling then the parties agree to allow the child to participate in the same.

Parties agree that in the event either parent must execute any documentation to allow the child to travel out of state or international the other parent will execute the same within 24 hours of receiving the same.

If Gabriel transports Mason to and from the visitation then the Father shall deposit $50.00 into the child's account which amount shall not exceed $100.00 per month.

## II.    DECISION-MAKING

### A.    DAY-TO-DAY DECISIONS

Each parent shall make decisions regarding the day-to-day care of a child while the child is residing with that parent, including any emergency decisions affecting the health or safety of a child.

### B.    MAJOR DECISIONS

Major decisions regarding each child shall be made as follows:

| | |
|---|---|
| Educational decisions | joint |
| Non-emergency health care | joint |
| Religious upbringing | joint |
| Extracurricular activities | joint |

## III.    FINANCIAL SUPPORT

### A.    CHILD SUPPORT

4

1/04/2021

Father's gross monthly income is $ 11,500.00
Mother's gross monthly income is $ 3,822.00

1. The final child support order is as follows:
   a. The Father shall pay to the other parent as regular child support the sum of $1,263.00 monthly. **The Child Support Worksheet shall be attached to this Order as an Exhibit.***

2. Retroactive Support: A judgment is hereby awarded in the amount of $0.00.

3. Payments shall begin on the 6th day of October, 2022 and due by the 15th of the month thereafter.

This support shall be paid directly to the other parent.

The parents acknowledge that court approval must be obtained before child support can be reduced or modified.

*Child Support Worksheet can be found on DHS website at http://www.state.tn.us/humanserv/is/isdocuments.html or at your local child support offices.

## B. FEDERAL INCOME TAX EXEMPTION*

The Mother is the parent receiving child support.

The Mother shall claim Mason every year and Father shall claim Gabriel every year.

The parents will furnish IRS Form 8332 to the parent entitled to the exemption by February 15 of the year the tax return is due.

## C. PROOF OF INCOME AND WORK-RELATED CHILD CARE EXPENSES

Each parent shall send proof of income to the other parent for the prior calendar year as follows:

- IRS Forms W-2 and 1099 shall be sent to the other parent on or before February 15.
- A copy of his or her federal income tax return shall be sent to the other parent on or before April 15 or any later date when it is due because of an extension of time for filing.
- The completed form required by the Department of Human Services shall be sent to the Department on or before the date the federal income tax return is due by the parent paying child support. *This requirement applies only if a parent is receiving benefits from the Department for a child.*

The parent paying work-related child care expenses shall send proof of expenses to the other parent for the prior calendar year and an estimate for the next calendar year, on or before February 15.

---

* NOTE: The child support schedule assumptions in the guidelines (1240-2-4-.03 (6)(b) ) assume that the parent receiving the child support will get the tax exemptions for the child.

5

1/04/2021

## D. HEALTH AND DENTAL INSURANCE

Reasonable health insurance on the child or children will be maintained by the father

Proof of continuing coverage shall be furnished to the other parent annually or as coverage changes. The parent maintaining coverage shall authorize the other parent to consult with the insurance carrier regarding the coverage in effect.

Uncovered reasonable and necessary medical expenses, which may include but is not limited to, deductibles or co-payments, eyeglasses, contact lens, routine annual physicals, and counseling will be paid equally. After insurance has paid its portion, the parent receiving the bill will send it to the other parent within ten days. The other parent will pay his or her share within 30 days of receipt of the bill.

If available through work, the father shall maintain dental, orthodontic, and optical insurance on the minor child or children.


## E. LIFE INSURANCE - the Father shall insure his own life in an amount sufficient to cover his child support obligation by whole or term life insurance. Until the child support obligation has been completed, each policy shall name the children as sole irrevocable primary beneficiary for that amount with the Mother as trustee for the benefit of the child(ren), to serve without bond or accounting.


## IV. PRIMARY RESIDENTIAL PARENT (CUSTODIAN) FOR OTHER LEGAL PURPOSES

The child or children are scheduled to reside the majority of the time as designated in Section I.A. This parent is designated as the primary residential parent also known as the custodian, SOLELY for purposes of any other applicable state and federal laws. If the parents are listed in Section II as joint decision-makers, then, for purposes of obtaining health or other insurance, they shall be considered to be joint custodians. THIS DESIGNATION DOES NOT AFFECT EITHER PARENT'S RIGHTS OR RESPONSIBILITIES UNDER THIS PARENTING PLAN.


## V. DISAGREEMENTS OR MODIFICATION OF PLAN

Should the parents disagree about this Parenting Plan or wish to modify it, they must make a good faith effort to resolve the issue by the process selected below before returning to Court. *Except for financial support issues including child support, health and dental insurance, uncovered medical and dental expenses, and life insurance*, disputes must be submitted to Mediation by a Rule 31 mediator chosen by the parents or the Court.

The costs of this process may be determined by the alternative dispute process or may be assessed by the Court based upon the incomes of the parents. It must be commenced by notifying the other parent and the Court by certified mail.


In the dispute resolution process:

A. Preference shall be given to carrying out this Parenting Plan.
B. The parents shall use the process to resolve disputes relating to implementation of the Plan.
C. A written record shall be prepared of any agreement reached, and it shall be provided to each parent.

1/04/2021

6

D. If the Court finds that a parent willfully failed to appear without good reason, the Court, upon motion, may award attorney fees and financial sanctions to the prevailing parent.

## VI. RIGHTS OF PARENTS

Under T.C.A. § 36-6-101 of Tennessee law, both parents are entitled to the following rights:

(1) The right to unimpeded telephone conversations with the child at least twice a week at reasonable times and for reasonable durations. The parent exercising parenting time shall furnish the other parent with a telephone number where the child may be reached at the days and time specified in a parenting plan or other court order or, where days and times are not specified, at reasonable times;

(2) The right to send mail to the child which the other parent shall not destroy, deface, open or censor. The parent exercising parenting time shall deliver all letters, packages and other material sent to the child by the other parent as soon as received and shall not interfere with their delivery in any way, unless otherwise provided by law or court order;

(3) The right to receive notice and relevant information as soon as practicable but within twenty-four (24) hours of any hospitalization, major illness or injury, or death of the child. The parent exercising parenting time when such event occurs shall notify the other parent of the event and shall provide all relevant healthcare providers with the contact information for the other parent;

(4) The right to receive directly from the child's school any educational records customarily made available to parents. Upon request from one parent, the parent enrolling the child in school shall provide to the other parent as soon as available each academic year the name, address, telephone number and other contact information for the school. In the case of children who are being homeschooled, the parent providing the homeschooling shall advise the other parent of this fact along with the contact information of any sponsoring entity or other entity involved in the child's education, including access to any individual student records or grades available online. The school or homeschooling entity shall be responsible, upon request, to provide to each parent records customarily made available to parents. The school may require a written request which includes a current mailing address and may further require payment of the reasonable costs of duplicating such records. These records include copies of the child's report cards, attendance records, names of teachers, class schedules, and standardized test scores;

(5) Unless otherwise provided by law, the right to receive copies of the child's medical, health or other treatment records directly from the treating physician or healthcare provider. Upon request from one parent, the parent who has arranged for such treatment or health care shall provide to the other parent the name, address, telephone number and other contact information of the physician or healthcare provider. The keeper of the records may require a written request including a current mailing address and may further require payment of the reasonable costs of duplicating such records. No person who receives the mailing address of a requesting parent as a result of this requirement shall provide such address to the other parent or a third person;

(6) The right to be free of unwarranted derogatory remarks made about such parent or such parent's family by the other parent to or in the presence of the child;

(7) The right to be given at least forty-eight (48) hours notice, whenever possible, of all extracurricular school, athletic, church activities and other activities as to which parental participation or observation would be appropriate, and the opportunity to participate in or observe them. The parent who has enrolled the child in each such activity shall advise the other parent of the activity and provide contact information for the person responsible for its scheduling so that the other parent may make arrangements to participate or observe whenever possible, unless otherwise provided by law or court order;

(8) The right to receive from the other parent, in the event the other parent leaves the state with the minor child or children for more than forty-eight (48) hours, an itinerary which shall include the planned dates of departure and return, the intended destinations and mode of travel and telephone numbers. The parent traveling with the child or children shall provide this information to the other parent so as to give that parent reasonable notice; and

(9) The right to access and participation in the child's education on the same bases that are provided to all parents including the right of access to the child during lunch and other school activities; provided, that the participation or access is legal and reasonable; however, access must not interfere with the school's day-to-day operations or with the child's educational schedule.

### VII. NOTICE REGARDING PARENTAL RELOCATION

The Tennessee statute (T.C.A. § 36-6-108) which governs the notice to be given in connection with the relocation of a parent reads in pertinent part as follows:

(a) After custody or co-parenting has been established by the entry of a permanent parenting plan or final order, if a parent who is spending intervals of time with a child desires to relocate outside the state or more than fifty (50) miles from the other parent within the state, the relocating parent shall send a notice to the other parent at the other parent's last known address by registered or certified mail. Unless excused by the court for exigent circumstances, the notice shall be mailed not later than sixty (60) days prior to the move. The notice shall contain the following:

(1) Statement of intent to move;

(2) Location of proposed new residence;

(3) Reasons for proposed relocation; and ·

(4) Statement that absent agreement between the parents or an objection by the non-relocating parent within thirty (30) days of the date notice is sent by registered or certified mail in accordance with subsection (a), the relocating parent will be permitted to do so by law.

(b) Absent agreement by the parents on a new visitation schedule within thirty (30) days of the notice or upon a timely objection in response to the notice, the relocating parent shall file a petition seeking approval of the relocation. The non-relocating parent has thirty (30) days to file a response in opposition to the petition. In the event no response in opposition is filed within thirty (30) days, the parent proposing to relocate with the child shall be permitted to do so.

(c) (1) If a petition in opposition to relocation is filed, the court shall determine whether relocation is in the best interest of the minor child.

**8**

Under penalty of perjury, we declare that this plan has been proposed in good faith and is in the best interest of each minor child and that the statements herein and on the attached child support worksheets are true and correct.

_Roielle Mc.Skee_
**Mother**

10/6/22 Anderson County
**Date and Place Signed**

Sworn to and subscribed before me this _____ day of _____, 20_____.

My commission expires:_____

_____
**Notary Public**

_Father_

10-6-22 Anderson County
**Date and Place Signed**

Sworn to and subscribed before me this _____ day of _____, 20_____.

My commission expires:_____

_____
**Notary Public**

**APPROVED FOR ENTRY:**

_HB. Cook_
*Attorney for Mother*
1110 Oak Ridge Hwy
*Address*
Clinton, TN 37716
*Address*
(865) 264-4887 1025269
*Phone and BPR Number*

*Attorney for Father*
834 N. Main St
*Address*
Clinton, TN 37716
*Address*
T: 457-7900 BPR 024428
*Phone and BPR Number*

**COURT COSTS**

The remaining court costs, if any, shall be equally divided.

It is so ORDERED this the __31st__ day of __Oct__, 2022.

_Cin Renee Auste_
**Judge or Chancellor**

1/04/2021

9